# EXHIBIT 2

# PROMISSORY NOTE

**Loan No. 196961**
**$4,849,950.00**                                                                                       **July ___, 2015**

      For Value Received, KAMM SOUTH, LLC, a California limited liability company (the "**Borrower**"), hereby promises to pay to the order of METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation (together with any future holder, "**Lender**"), at 10801 Mastin Blvd., Suite 930, Overland Park, Kansas 66210, or such other address as the holder of this Note may designate, the principal sum of Four Million Eight Hundred Forty-Nine Thousand Nine Hundred Fifty and 00/100 Dollars ($4,849,950.00), together with interest from the date of the advance of funds hereunder on said principal sum, or the unpaid balance thereof, at the interest rate or rates set forth below, such principal and interest is to be paid in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. The loan evidenced by this Note (the "**Loan**") is subject to the terms of the Loan Agreement dated as of even date herewith between the Borrower and Lender (the "**Loan Agreement**").

      1.     <u>Interest</u>.

      Subject to the Default Interest Rate (as defined below) and to adjustment as set forth herein, the outstanding principal balance of this Note shall bear interest, beginning from the date of the advance of funds hereunder on the said principal sum, and continuing until all sums due under this Note have been paid in full, at the fixed rate of Four and 90/100 percent (4.90%) per annum.

      The interest rate on the outstanding balance of this Note shall be subject to adjustment by Lender or any subsequent holder of this Note on January 5, 2029 (the "**Adjustment Date**") by written notice to Borrower at least forty-five (45) days prior to the Adjustment Date. The adjusted interest rate shall be determined by Lender or the holder hereof applying its standards for determining an interest rate for a loan of equivalent term considering the amount of the loan, the occurrence of prior defaults under this loan, the credit risk, the collateral, the Borrower and other factors normally used in the holder's determination of an appropriate interest rate to be charged to a borrower.

      NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR AN ADJUSTMENT IN THE INTEREST RATE.

1

2.  **Payments.** Payments on this Note shall be made as follows:

(a)  Borrower shall make semi-annual payments of accrued interest on the outstanding principal balance of this Note commencing on the fifth (5th) day of January, 2016 and continuing on the fifth (5th) day of each July and January thereafter through the Maturity Date (defined below) (each, an "**Interest Payment Date**"). Each payment shall be in the amount of the accrued, but unpaid, interest through the date immediately preceding the date such payment is due.

(b)  Commencing on January 5, 2016 and continuing on the fifth (5th) day of each July and January thereafter until the Maturity Date, Borrower shall make semi-annual payments of principal in the amount of Ninety-Seven Thousand and 00/100 Dollars ($97,000.00) each.

(c)  The entire remaining principal balance and accrued, but unpaid, interest and any other amounts owed by Borrower under this Note, the Loan Agreement, the Deed of Trust (defined below) or under any of the other loan documents entered into now or in the future in connection with the loan (the "**Loan Documents**") shall be paid in full on January 5, 2034 (the "**Maturity Date**").

This Note will not fully amortize over its term and provides for a balloon payment that will be due in full on the Maturity Date, and Borrower acknowledges that no provision or agreement has been made for the refinancing by Lender of the amount to be paid on such date.

3.  **Prepayment.** The Borrower shall have no right or privilege to prepay all or any portion of the indebtedness evidenced by this Note except as follows:

Beginning July 5, 2015, privilege is reserved to Borrower to prepay, on any Interest Payment Date up to fifteen percent (15%) of the original principal balance of this Note (the "**15% Limitation**") in any one calendar year period, without premium. In determining the 15% Limitation, the scheduled principal payments set forth in Section 2(b) above shall be included.

Any prepayment in excess of the 15% Limitation shall be prohibited absent the payment of the Prepayment Price (as hereinafter defined) plus interest accrued to the date of prepayment and conditioned upon the receipt of at least thirty (30) days prior written notice. Such notice shall specify the amount of principal to be prepaid and the date (also referred to as the "**Prepayment Date**") upon which Borrower shall prepay the Note, which date shall be an Interest Payment Date and shall be not less than thirty (30) days nor more than sixty (60) days from the date of the notice of prepayment.

The Prepayment Price shall be determined by Lender in good faith, as of 5:00 p.m., New York time, on the fifth business day prior to the Prepayment Date. Such Prepayment Price, as calculated by Lender, will be binding upon Borrower, absent manifest error. Promptly upon

2

such determination Lender shall notify Borrower in writing of the amount of such Prepayment Price, setting forth in reasonable detail the computation thereof. On the Prepayment Date, Borrower shall prepay the Note at the Prepayment Price plus interest accrued thereon to the Prepayment Date.

The term "**Prepayment Price**" shall mean, with regard to the prepaid principal amount, the greater of (x) par plus one percent (1%), and (y) the sum of the values of (1) each remaining mandatory principal payment prior to the Adjustment Date, if any, or the Maturity Date, as the case may be, and (2) the principal payment due on the Maturity Date (if there is an Adjustment Date, the entire outstanding principal balance as of such date shall be deemed due and payable solely for purposes of determining the Prepayment Price) (each such mandatory payment and such payment at maturity being herein referred to as a "**Payment**") plus the value of all related scheduled interest payments on the Note to be prepaid during the period from the Prepayment Date to the date of each Payment. The value of each Payment and such related scheduled interest payments shall be determined by discounting, at the applicable Treasury Rate, such Payment and such related scheduled interest payments from the respective scheduled payment dates of such Payment and such related scheduled interest payments to the Prepayment Date. The Treasury Rate with respect to each Payment and such related scheduled interest payments is the yield which shall be imputed, by linear interpolation, from the current weekly yield of those United States Treasury Notes having maturities as close as practicable to the scheduled payment date of the Payment, as published in the most recent Federal Reserve Statistical Release H.15 (510) or any successor publication thereto which determination by Lender shall be conclusive and binding upon Borrower absent manifest error.

Privilege is further reserved to prepay the Loan, in full or in part, without payment of the Prepayment Price, (a) during the forty-five (45) day period preceding and the forty-five (45) day period following the Adjustment Date, upon thirty (30) days prior written notice, and (b) during the thirty (30) day period preceding the Maturity Date.

Prepayments shall not relieve Borrower from making the regularly scheduled principal payments on this Note. No other prepayments shall be permitted.

BORROWER EXPRESSLY (A) WAIVES ANY RIGHTS IT MAY HAVE UNDER CALIFORNIA CIVIL CODE SECTION 2954.10 TO PREPAY THIS NOTE, IN WHOLE OR IN PART, WITHOUT FEE OR PENALTY, UPON ACCELERATION OF THE MATURITY DATE OF THIS NOTE, AND (B) AGREES THAT IF, FOR ANY REASON, A PREPAYMENT OF THIS NOTE IS MADE, UPON OR FOLLOWING ANY ACCELERATION OF THE MATURITY DATE OF THIS NOTE BY THE HOLDER THEREOF ON ACCOUNT OF ANY DEFAULT BY BORROWER UNDER ANY LOAN DOCUMENT, INCLUDING BUT NOT LIMITED TO ANY TRANSFER, FURTHER ENCUMBRANCE OR DISPOSITION WHICH IS PROHIBITED OR RESTRICTED BY THE DEED OF TRUST, THEN BORROWER SHALL BE OBLIGATED TO PAY

CONCURRENTLY THE PREPAYMENT PRICE SPECIFIED IN THIS SECTION 3 (IF APPLICABLE). BY INITIALING THIS PROVISION IN THE SPACE PROVIDED BELOW, BORROWER AGREES THAT LENDER'S AGREEMENT TO MAKE THE LOAN AT THE INTEREST RATE AND FOR THE TERM SET FORTH IN THIS NOTE CONSTITUTES ADEQUATE CONSIDERATION FOR THIS WAIVER AND AGREEMENT.

INITIALS OF AUTHORIZED SIGNATORIES OF BORROWER:



4. <u>Calculation of Interest/Application of Payments</u>. All interest on any indebtedness evidenced by this Note shall be calculated on the basis of a three hundred sixty (360) day year composed of twelve (12) thirty (30) day months. Interest for partial months shall be calculated by multiplying the principal balance of this Note by the applicable per annum rate, dividing the product so obtained by 360, and multiplying the result by the actual number of days elapsed. Calculating interest for partial months on the basis of a 360-day year results in more interest than if a 365-day year were used. All payments received shall, at Lender's option, be applied to interest, to the reduction of unpaid principal, or to payment of other sums due under this Note or any instrument securing this Note. At the Lender's option, any sums becoming due hereunder or under any instrument securing this Note may be added to the principal balance hereunder and shall bear interest as provided herein.

5. <u>Security</u>. This Note is secured by that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing (the "**Deed of Trust**") dated of even date herewith and recorded in the Official Records of Fresno County, State of California, executed by Borrower, as Trustor, to Leon A. Moreno, Trustee, for the benefit of Lender, as Beneficiary. In the event the property described in said Deed of Trust (the "**Property**") or any portion thereof or any interest therein be sold or conveyed or becomes subject to an agreement to sell or convey, other than transfers expressly permitted in the Loan Documents, prior to the time the indebtedness owing on this Note shall have been paid in full, then in any and all such events the entire indebtedness owing on this Note shall, at the sole option of Lender, become due and payable together with the Prepayment Price. It is agreed that there shall be no additional liens or deeds of trust placed of record on the Property (other than as expressly permitted therein), without the prior written consent of Lender.

6. <u>Default Interest</u>. If any part of the principal or interest evidenced hereby is not paid when due, the unpaid installment or payment shall bear interest thereafter at an annual rate of sixteen percent (16%) per annum, but in no event higher than the maximum rate allowed under the law of the State of California applicable to this loan, if any (the "**Default Interest Rate**").

4

Promissory Note
Kamm South, LLC
Loan No. 196961
79293248.2 0053564-00202

7. <u>Default/Acceleration</u>. It is hereby agreed that (i) if default be made in the payment of any of the installments of interest or principal aforesaid, at the time and place when and where the same become due and payable as aforesaid, or (ii) if default be made in any promise or agreement contained in any other document executed in connection with or to secure this Note (including, without limitation, an Event of Default under the Deed of Trust, then, at the option of the Lender, the principal sum, together with all accrued and unpaid interest thereon, shall at once become due and payable at the designated place of payment, and all amounts then owing shall thereafter bear interest at the Default Interest Rate. Any forbearance or failure to exercise this right shall not constitute a waiver of Lender's right to exercise the right with respect to any such default and any subsequent default.

8. <u>Full Recourse</u>. Borrower shall be fully and personally liable for the payment of the loan evidenced by this Note and the performance of the Loan documents.

9. <u>Costs and Expenses</u>. In the event of default under this Note, Borrower agrees to pay all costs and expenses which may be incurred by Lender with respect to such default, including without limitation all costs and expenses of investigating the same and circumstances and events surrounding or relating thereto, fees charged by and expenses of professional consultants and advisers, including attorneys and accountants, costs of searching records, obtaining title reports, title insurance, trustee's fees, and all other reasonable expenses incurred by Lender that are necessary at any time in Lender's opinion for the protection of its interest and the enforcement of its rights. Attorneys' fees shall include costs and expenses of legal advice with respect to the event of default, rights and remedies, negotiations with the undersigned and any other parties in interest, such as guarantors, other encumbrancers, receivers, trustees and the like, and attorneys' fees and expenses with respect to any action which Lender may commence or in which it might appear, whether for the purpose of protecting or preserving Lender's rights or to realize upon the lien of any security interest upon real or personal property, or both, by foreclosure or otherwise, and all attorneys' fees and expenses in any review of or appeal from any such action and any other proceeding, including any bankruptcy or arbitration proceeding.

10. <u>Interest Limitation</u>. In the event the interest provisions hereof or any exaction provided for herein shall result for any reason and at any time during the term of this Note in an effective rate of interest which transcends the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied on principal immediately upon receipt and effect as though the payor had specifically designated such extra sums to be so applied to principal, and the holder of this Note shall accept such extra payment or payments as a premium-free prepayment. If any such amounts are in excess of the principal then outstanding, such excess shall be paid to Borrower. In no event shall any agreed-to or actual exaction as consideration for the Loan transcend the limits imposed or

5

provided by the law applicable to this transaction or Borrower in the jurisdictions in which the real property collateral or any other security for payment of this Note is located for the use or detention of money or for forbearance in seeking its collection.

       11.      <u>Miscellaneous</u>.  All obligations under this Note shall be the joint and several obligations of each of the individuals and entities comprising the Borrower, if more than one. This Note shall bind the heirs, personal representatives, successors and assigns of Borrower.  The endorsers, guarantors, and sureties of this Note and each of them hereby waive diligence, demand, presentment for payment, notice of nonpayment, protest, and notice of protest, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of the makers or any other person or persons.  The pleading of any statute of limitations as a defense to any demand against endorsers, guarantors, and sureties is expressly waived by each and all of the said parties.  This Note, and the documents executed in connection with this Note, may be transferred, assigned or hypothecated by Lender without the prior consent of the undersigned.

       12.      <u>Severability</u>.  If any provision of this Note or the application thereof to any person or situation shall, to any extent, be held invalid or unenforceable, the remainder of this Note and the other Loan Documents, and the application of such provision to persons or situations other than those to which it shall have been held invalid or unenforceable, shall not be affected thereby, but shall continue valid and enforceable to the fullest extent permitted by law.

       13.      <u>Business Purposes</u>.  This loan is a loan for business purposes and the proceeds hereof shall not be used primarily for personal, family or household purposes.

[Signatures on following page]

6

This Note is made and executed under, and is in all respects to be governed by, the laws of the State of California, without regard to its choice of law rules.

"BORROWER"

KAMM SOUTH, LLC, a
California limited liability company

By: _____
Farid Assemi
Its General Manager

By: _____
Farshid Assemi
Its General Manager

By: _____
Darius Assemi
Its General Manager

7