# EXHIBIT 7

Loan No. 196961

# ENVIRONMENTAL INDEMNITY AGREEMENT

THIS ENVIRONMENTAL INDEMNITY AGREEMENT (this "**Agreement**") is entered into as of July 29, 2015, by KAMM SOUTH, LLC, a California limited liability company (the "**Borrower**") and FARID ASSEMI, a married man, FARSHID ASSEMI, a married man, and DARIUS ASSEMI, a single man (together, jointly and severally, the "**Guarantor**") (Borrower and Guarantor are collectively referred to herein as "**Indemnitor**"), in favor of METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation, its successors and assigns ("**Lender**"), with reference to the following facts:

      A.    Lender has loaned or will loan to Borrower the principal sum of FOUR MILLION EIGHT HUNDRED FORTY-NINE THOUSAND NINE HUNDRED FIFTY AND 00/100 DOLLARS ($4,849,950.00) (the "**Loan**"), pursuant to the terms of that certain Loan Agreement dated as of even date hereof, payment of which is evidenced by a Promissory Note of even date herewith in the amount of Four Million Eight Hundred Forty-Nine Thousand Nine Hundred Fifty and 00/100 Dollars ($4,849,950.00) (the "**Note**"). The Note is secured by a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith executed by Borrower for the benefit of Lender which encumbers certain real and personal property located in Fresno County, California (as amended, modified, or supplemented from time to time, the "**Deed of Trust**"). The real property encumbered by the Deed of Trust is more particularly described in <u>Exhibit A</u> attached hereto and is referenced herein as the "**Property**".

      B.    As a condition to making the Loan, Lender requires Indemnitor to indemnify and hold harmless Lender from any Environmental Claim, any Requirements of Environmental Law, and any violation of any Environmental Permit, and all Costs (as the foregoing terms are defined in <u>Exhibit B</u> hereto) relating to the Property. Lender would not make the Loan without this Agreement and Indemnitor acknowledges and understands that this Agreement is a material inducement for Lender's agreement to make the Loan. This Agreement is not intended to be, nor shall it be, secured or limited by the Deed of Trust in any manner whatsoever and it is not intended to secure payment of the Note but rather is an independent obligation of Indemnitor. It shall be understood that any and all rights and remedies contained herein shall be in addition to and not in derogation of any rights or remedies contained in the Deed of Trust or in any related loan documents.

      NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Indemnitor jointly and severally agrees as follows:

      1.    <u>Definitions</u>. The Recitals are incorporated herein by this reference. Certain capitalized terms used herein and not defined shall have the meanings set forth on attached <u>Exhibit B</u> attached hereto and incorporated herein.

1

2. <u>Indemnification</u>.

(a) Subject to paragraph 2(c) below, Indemnitor shall protect, defend, indemnify, and hold harmless Lender, its officers, directors, shareholders, agents and employees and their respective heirs, legal representatives, successors and assigns (Lender and all such other persons and entities being referred to herein individually as an "**Indemnitee**" and collectively as "**Indemnitees**") from and against all Costs which at any time may be imposed upon the Property, the Indemnitees, or any of them, arising out of or in connection with (i) Requirements of Environmental Law; (ii) Environmental Claims; (iii) the failure of Indemnitor, or any other party directly or indirectly connected with the Property, or affiliated with Indemnitor to obtain, maintain, or comply with any Environmental Permit; and/or (iv) the presence or existence of Hazardous Materials (as defined in <u>Exhibit B</u> hereto) at, on, about, under, within, near or in connection with the Property.

(b) In the event that any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (the "**Remedial Work**") is necessary or desirable under any applicable local, state or federal law or regulation, any judicial order, or by any governmental or non-governmental entity or person because of, or in connection with, the current or future presence, suspected presence, release or suspected release of Hazardous Materials in or into the air, soil, ground water, surface water or soil vapor at, on, about, under, within, from or near the Property (or any portion thereof), Indemnitor shall within thirty (30) days after written demand for performance thereof by any Indemnitee (or such shorter period of time as may be required under any applicable law, regulation, order or agreement), promptly commence, or cause to be commenced, and thereafter diligently prosecute to completion, all such Remedial Work. All Remedial Work shall be performed by one or more contractors, approved in advance in writing by Lender, and under the supervision of a consulting engineer approved in advance in writing by Lender. All Costs related to such Remedial Work shall be paid by Indemnitor including, without limitation, Costs incurred by any Indemnitee in connection with monitoring or review of such Remedial Work. In the event Indemnitor shall fail to promptly commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Lender may, but shall not be required to, cause such Remedial Work to be performed and all Costs shall become an Environmental Claim hereunder.

(c) Notwithstanding anything to the contrary set forth in this Agreement, the Indemnitor shall have no liability under this Agreement with respect to Hazardous Materials first introduced to, or released or discharged on, the Property after the complete satisfaction, assignment or reconveyance of the Deed of Trust, with the burden of proof for the determination of the occurrence of such release or discharge after the assignment or reconveyance of the Deed of Trust to be on Indemnitor.

(d) This Agreement, and all rights and obligations hereunder shall survive (i) surrender of the Note; (ii) satisfaction, assignment or reconveyance of the Deed of Trust and release of other security provided in connection with the Loan; (iii) foreclosure of the Deed of Trust and other security instruments in connection with the Loan; (iv) acquisition of all or a

2

portion of the Property by Lender; and (v) transfer of all or a portion of Lender's rights in the Loan and the Property.

(e) Nothing contained in this Agreement shall prevent or in any way diminish or interfere with any rights or remedies, including, without limitation, the right to contribution, which any Indemnitee may have against Indemnitor or any other party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at Title 42 U.S.C. § 9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

3. Notice of Actions.

(a) Indemnitor shall give prompt written notice to Lender of: (i) any proceeding, inquiry, notice, or other communication by or from any governmental or non-governmental entity regarding the presence or suspected presence of any Hazardous Material at, on, about, under, within, near or in connection with the Property or any migration thereof from or to the Property; (ii) any actual or alleged violation of any Requirements of Environmental Law; (iii) all Environmental Claims; (iv) the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be subject to any restrictions on ownership, occupancy, transferability, or use, or subject the owner or any person having any interest in the Property to any liability, penalty, or disability under any Requirements of Environmental Law; and (v) the receipt of any notice or discovery of any information regarding any actual, alleged, or potential use, manufacture, production, storage, spillage, seepage, release, discharge, disposal or any other presence or existence of any Hazardous Material at, on, about, under, within, near or in connection with the Property.

(b) Immediately upon receipt of the same, Indemnitor shall deliver to Lender copies of any and all Environmental Claims, and any and all orders, notices, permits, applications, reports, and other communications, documents, and instruments pertaining to the actual, alleged, or potential presence or existence of any Hazardous Material at, on, about, under, within, near or in connection with the Property.

(c) Lender shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions in connection with the Property involving any Environmental Claim, any Hazardous Material or Requirements of Environmental Law, and Indemnitor shall reimburse Lender upon demand for all of Lender's Costs in connection therewith.

4. Procedures Relating to Indemnification.

(a) In any circumstance in which this Agreement applies, Lender may, but shall not be obligated to, employ its own legal counsel and consultants to investigate, prosecute, negotiate, or defend any such Environmental Claim and Lender shall have the right to compromise or settle the same without the necessity of showing actual liability therefor, and

3

without the consent of Indemnitor. Indemnitor shall reimburse Lender, upon demand, for all Costs incurred by Lender, including the amount of all Costs of settlements entered into by Lender.

(b) Indemnitor shall not, without the prior written consent of Lender, in any circumstance in which this Agreement applies, (i) settle or compromise any action, suit, proceeding, or claim or consent to the entry of any judgment that does not include as an unconditional term thereof the delivery by the claimant or plaintiff to Lender of (x) a full and complete written release of Lender (in form, scope and substance satisfactory to Lender in its sole discretion) from all liability in respect of such action, suit or proceeding and (y) a dismissal with prejudice of such suit, action or proceeding; or (ii) settle or compromise any action, suit, proceeding, or claim in any manner that may adversely affect Lender as determined by Lender in its sole discretion.

5. Binding Effect.

(a) This Agreement shall be binding upon Indemnitor, their successors and permitted assigns and shall inure to the benefit of the Indemnitees and their successors and assigns, including as to Lender, without limitation, any holder of the Note and any affiliate of Lender which acquires all or part of the Property by any sale, assignment, deed in lieu of foreclosure, foreclosure under the Deed of Trust, or otherwise. The obligations of Indemnitor under this Agreement shall not be assigned without the prior written consent of Lender, which consent may be given, conditioned or withheld in the sole discretion of Lender.

(b) This Agreement shall run with the Property and constitute the binding obligation of all parties having a legal ownership interest in the Property (as distinguished from only an equitable or mortgage interest or interest of a secured creditor) at any time during the time that the Deed of Trust constitutes a lien upon the Property. All such parties shall be deemed an Indemnitor under this Agreement. This Agreement or a memorandum thereof, at Indemnitee's option, may be placed of record against the Property to impart notice of this Agreement to all parties in ownership of the Property during the term of the Deed of Trust. Upon termination of the lien of the Deed of Trust, the memorandum, but not this Agreement, shall automatically become null and void as to the portion of the Property encumbered by the Deed of Trust, and this Agreement shall not be applicable to subsequent owners of the applicable portion of the Property unless such subsequent owner was also an owner of the applicable portion of the Property during the term of the Deed of Trust.

6. Liability of Indemnitor. The liability of Indemnitor under this Agreement shall in no way be limited or impaired by the provisions of the Note, Deed of Trust or any of the other documents evidencing or securing the Loan, or any amendment, modification, extension or renewal thereof. In addition, the liability of Indemnitor under this Agreement shall in no way be limited or impaired by any sale, assignment, or foreclosure of the Note or Deed of Trust or any sale or transfer of all or any part of the Property or any interest therein, and shall expressly survive any foreclosure of the Deed of Trust.

4

7. <u>Unsecured Obligations</u>. The liability of Indemnitor arising under this Agreement shall not be secured by any collateral for the Loan, including without limitation the Deed of Trust.

8. <u>Waiver</u>. Indemnitor waives any right or claim of right to cause a marshaling of the assets of Indemnitor or to cause Lender to proceed against any of the security for the Loan before proceeding under this Agreement against Indemnitor. Indemnitor agrees that any payments required to be made hereunder shall become due on demand. Indemnitor expressly waives and relinquishes all rights and remedies accorded by applicable law to indemnitors or guarantors, except any rights of subrogation that Indemnitor may have; provided that the indemnity provided for hereunder shall neither be contingent upon the existence of any such rights of subrogation nor subject to any claims or defenses whatsoever that may be asserted in connection with the enforcement or attempted enforcement of such subrogation rights, including, without limitation, any claim that such subrogation rights were abrogated by any acts or omissions of Lender.

9. <u>Notices</u>. All notices, consents, approvals, elections and other communications (collectively "**Notices**") hereunder shall be in writing (whether or not the other provisions of this Agreement expressly so provide) and shall be deemed to have been duly given if mailed by United States registered or certified mail, with return receipt requested, postage prepaid, or by United States Express Mail or courier service to the parties at the following addresses (or at such other addresses as shall be given in writing by any party to the others pursuant to this Section 9) and shall be deemed complete upon receipt or refusal to accept delivery as indicated in the return receipt or in the receipt of such Express Mail or courier service:

| | |
|---|---|
| If to Borrower: | Kamm South, LLC<br>1306 West Herndon Avenue, Suite 101<br>Fresno, CA  93711<br>Attn:   Farid Assemi, Farshid Assemi and Darius Assemi |
| If to Guarantor: | Farid Assemi<br>Farshid Assemi<br>Darius Assemi<br>1306 West Herndon Avenue, Suite 101<br>Fresno, CA 93711 |
| If to Lender: | Metropolitan Life Insurance Company<br>Agricultural Investments<br>10801 Mastin Boulevard, Suite 930<br>Overland Park, Kansas  66210<br>Attention:  SSU Director |

5

Environmental Indemnity Agreement
Kamm South, LLC
Loan No. 196961

79293188.2 0053564-00202

and:  Metropolitan Life Insurance Company
Agricultural Investments
205 E. River Park Circle, Suite 330
Fresno, CA  93720
Attention:  Director, WRO

and to:  Metropolitan Life Insurance Company
Agricultural Investments
10801 Mastin Boulevard, Suite 930
Overland Park, Kansas  66210
Attention:  Law Department

  10. <u>Attorneys' Fees</u>.  In the event that any Indemnitee brings or otherwise becomes a party to any suit or other proceeding (including, without limitation, any administrative proceedings) with respect to the subject matter or enforcement of this Agreement, such Indemnitee shall, in addition to such other relief as may be awarded, be entitled to recover from Indemnitor attorneys' fees, expenses and costs of investigation as are actually incurred (including, without limitation, attorneys' fees, expenses and costs of investigation incurred in appellate proceedings, costs incurred in establishing the right to indemnification, or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 U.S.C. § 101 <u>et seq.</u>, or any successor statutes).

  11. <u>Governing Law</u>.  This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to such principles of conflicts of law.  Indemnitors hereby irrevocably submit to the non-exclusive jurisdiction of any State or federal court over any suit, action or proceeding arising out of or relating to this Agreement, and Indemnitors hereby agree and consent that, in addition to any other methods of service of process in any such suit, action or proceeding in any State or federal court, service of process may be made by certified or registered mail, return receipt requested, directed to Indemnitors at the address indicated in Section 9 hereof, and service so made shall be complete five (5) days after the same shall have been so mailed.

  12. <u>Successive Actions</u>.  A separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified by Indemnitor under this Agreement.  Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time.  No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

  13. <u>Partial Invalidity</u>.  If any provision of this Agreement shall be determined to be unenforceable in any circumstances by a court of competent jurisdiction, then the balance of this Agreement shall be enforceable nonetheless, and the subject provision shall be enforceable in all other circumstances.

6

Environmental Indemnity Agreement
Kamm South, LLC
Loan No. 196961

79293188.2 0053564-00202

14. <u>Interest on Unpaid Amounts</u>.  All amounts required to be paid or reimbursed to any Indemnitee hereunder shall bear interest from the date of expenditure by such Indemnitee or the date of written demand to Indemnitor hereunder, whichever is earlier, until paid to Indemnitee(s).  The interest rate shall be the lesser of (a) sixteen percent (16%) per annum or (b) the maximum rate then permitted for the parties to contract for under applicable law.

15. <u>Joint and Several Liability</u>.  Borrower and Guarantor, and each of the individuals comprising Guarantor, shall be jointly and severally liable for all obligations and liabilities under this Agreement.

*(Signatures follow on next page.)*

IN WITNESS WHEREOF, Indemnitor has executed this Agreement as of the date first set forth above.

INDEMNITOR:

BORROWER:

KAMM SOUTH, LLC, a
California limited liability company

By: _____
Farid Assemi
Its General Manager

By: _____
Farshid Assemi
Its General Manager

By: _____
Darius Assemi
Its General Manager

GUARANTOR:

_____
FARID ASSEMI

_____
FARSHID ASSEMI

_____
DARIUS ASSEMI

8

# EXHIBIT A
# TO
# ENVIRONMENTAL INDEMNITY AGREEMENT

Legal Description:

PARCEL ONE:

The North half of the Northeast quarter of Section 20, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM the North 50 feet.

ALSO EXCEPTING THEREFROM all the coal and other minerals in said Land as reserved in the Patent from the United States of America, recorded March 10, 1925 in Book 541, Page 367 of Official Records.

ALSO EXCEPTING THEREFROM one-half of Grantors right, title and interest in and to all oil, gas and minerals in, upon or under said Land as excepted in the Deed recorded June 30, 1975, Instrument No. 71252 in Book 7065, Page 578, Official Records from William J. Rivers, et al to Raymond JaCk Minnite, et al.

APN: 038-130-71S

PARCEL TWO:

The South three-fourths of the East half of Section 20, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all that portion thereof described as follows:

That portion of the East half of said Section 20 described as follows:

Beginning at the South quarter corner of said Section, said South quarter corner bears South 88° 59' 30" East 2634.82 feet from the Southwest corner of said Section, said Southwest corner begins at coordinated Y-434 249.85 feet and X – 1 565 579.81 feet; thence (1) along the West line of the East half of said Section North 1° 35' 52" East 125.38 feet; thence (2) South 37° 04' 36" East 159.28 feet to the South line of said Section; thence (3) along said South line North 88° 59' 39" West 99.54 feet to the point of beginning.

ALSO EXCEPTING THEREFROM all the coal and other minerals in said Land, together with the right to prospect for, mine and remove the same, as reserved in the Patent from the United States of America, recorded March 10, 1925 in Book 541, Page 367 of Official Records.

ALSO EXCEPTING THEREFROM one-half of the Grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said Land as excepted in the Deed recorded June 30, 1975, Instrument No. 71252 in Book 7065, Page 578, Official Records from William J. Rivers, et al to Raymond Jack Minnite, et al.

APN: 038-130-35S

Exhibit A-1

Environmental Indemnity Agreement
Kamm South, LLC
Loan No. 196961

79293188.2 0053564-00202

PARCEL THREE:

The West half of the Northwest quarter of Section 21, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM the North 50 feet of said West half of the Northwest quarter.

ALSO EXCEPTING THEREFROM all oil, oil rights, natural gas, natural gas rights and other hydrocarbons, by whatsoever name known, and all other minerals and mineral rights, as reserved and excepted in the Deed to the State of California recorded March 13, 1959 in Book 4192, Page 207 of Official Records.

APN: 038-130-62S

PARCEL FOUR:

That certain non-exclusive determinable easement of irrigation pipe lines on, over and under a strip of land 30 feet in width along the Western boundary line of the Northwest quarter, the Northwest quarter of the Southwest quarter and the West half of the Southwest quarter of the Southwest quarter, and the Northern boundary line of the North half, lying West of the San Luis Canal, all in Section 9, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof, as granted by William J. Rivers, et al, to Raymond Minnite, et al, by Grant Deed recorded June 30, 1978 in Book 7065, Page 587 as Instrument No. 71253 of Official Records.

PARCEL FIVE:

A non-exclusive easement for a water pump station and/or water filtration/treatment system and incidental purposes thereto, as created in Instrument recorded December 13, 1999 as Instrument No. 99-176922 of Official Records, over and across the following property:

The East 70 feet of the North 300 feet of the Northeast quarter of the Southeast quarter of Section 17, Township 16, Range 14, Mount Diablo Base and Meridian.

PARCEL SIX:

A non-exclusive easement for underground irrigation pipeline and incidental purposes thereof, as created in Instrument recorded December 13, 1999 as Instrument No. 99-176922 of Official Records, over and across the following property:

The East 50 feet of the Northeast quarter and the Southeast quarter of Section 17, Township 16, Range 14, Mount Diablo Base and Meridian.

PARCEL SEVEN:

A non-exclusive easement for the maintenance, repair and replacement of an irrigation pipeline and incidental purposes thereof, as created in Instrument recorded December 13, 1999 as Instrument No. 99-176923 of Official Records, on, over and under the following property:

A strip of land 30 feet in width along the Western boundary line of the Northwest quarter, the Northwest quarter of the Southwest quarter and the West half of the Southwest quarter of the Southwest quarter, and the Northern boundary line of the North half, lying West of the San Luis Canal, all in Section 9, Township 16 South, Range 14 East, Mount Diablo Base and Meridian.

Exhibit A-2

PARCEL EIGHT:

Non-exclusive access and other rights in and to a well and well-site, upon the terms and conditions contained in that certain "Well Sharing Agreement" dated July 29, 2015, by and among Farid Assemi, Trustee of the Bibi Assemi Revocable Trust dated July 9, 2010; Kamm South, LLC, a California limited liability company; and Cantua Orchards, LLC, a California limited liability company, as located on the following described property:

Lots 24, 25 and 26, inclusive, in Section 4, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, according to the Map of a part of California Land Company's Tract No. 1, recorded May 8, 1912, in Book 7, Page 49 of Record of Surveys, records of said County.

EXCEPTING THEREFROM all that portion of said South half of Section 4 of that certain parcel of land granted to the United States of America and described in that certain Deed executed by Rabb Bros., a co-partnership,

Exhibit A-3

Environmental Indemnity Agreement
Kamm South, LLC
Loan No. 196961

79293188.2 0053564-00202

**EXHIBIT B**
**TO**
**ENVIRONMENTAL INDEMNITY AGREEMENT**

Definitions.  For purposes of this Agreement, the following terms shall have the following meanings:

(a) "Environmental Claim" shall include, but not be limited to, any claim, demand, action, cause of action, suit, loss, cost, damage, fine, penalty, expense, liability, judgment, proceeding, or injury, whether threatened, sought, brought, or imposed, that seeks to impose costs or liabilities for (i) noise; (ii) pollution or contamination of the air, surface water, ground water, or soil; (iii) solid, gaseous, or liquid waste generation, handling, treatment, storage, disposal, or transportation; (iv) exposure to Hazardous Materials; (v) the manufacture, processing, distribution in commerce, use, or storage of Hazardous Materials; (vi) injury to or death of any person or persons directly or indirectly connected with Hazardous Materials and directly or indirectly related to the Property; (vii) destruction or contamination of any property directly or indirectly connected with Hazardous Materials and directly or indirectly related to the Property; or (viii) any and all penalties directly or indirectly connected with Hazardous Materials and directly or indirectly related to the Property.  The term "Environmental Claim" also includes (i) the costs of removal of any and all Hazardous Materials from all or any portion of the Property, (ii) costs required to take necessary precautions to protect against the release of Hazardous Materials at, on, in, about, under, within, near or in connection with the Property in or into the air, soil, surface water, ground water, or soil vapor, any public domain, or any surrounding areas, and (iii) costs incurred to comply, in connection with all or any portion of the Property or any surrounding areas, with all applicable laws with respect to Hazardous Materials, including any such laws applicable to the work referred to in this sentence.  "Environmental Claim" also means any asserted or actual breach or violation of any Requirements of Environmental Law, or any event, occurrence, or condition as a consequence of which, pursuant to any Requirements of Environmental Law, (i) Indemnitor, Lender, or any owner, occupant, or person having any interest in the Property shall be liable or suffer any disability, or (ii) the Property shall be subject to any restriction on use, ownership, transferability, or (iii) any Remedial Work shall be required.

(b) "Environmental Permit" means any permit, license, approval, or other authorization with respect to any activities, operations, or businesses conducted on or in relation to the Property under any applicable law, regulation, or other requirement of the United States or any state, municipality, or other subdivision or jurisdiction related to pollution or protection of health or the environment, or any private agreement (such as covenants, conditions and restrictions), including laws, regulations or other requirements relating to emissions, discharges, or releases or threatened releases of Hazardous Materials into ambient air, surface water, ground water, or soil, or otherwise relating to the manufacture, processing, distribution, use, generation, treatment, storage, disposal, transportation, or handling of Hazardous Materials directly or indirectly related to the Property.

Exhibit B-1

(c) "Costs" shall mean all liabilities, losses, costs, damages, (including consequential damages), expenses, claims, attorneys' fees, experts' fees, consultants' fees and disbursements of any kind or of any nature whatsoever. For the purposes of this definition, such losses, costs and damages shall include, without limitation, remedial, removal, response, abatement, cleanup, legal, investigative and monitoring costs and related costs, expenses, losses, damages, penalties, fines, obligations, defenses, judgments, suits, proceedings and disbursements.

(d) "Requirements of Environmental Law" means all requirements of environmental or ecological laws or regulations or controls related to the Property, including all requirements imposed by any law, rule, order, or regulations of any federal, state, or local executive, legislative, judicial, regulatory, or administrative agency, board, or authority, or any private agreement (such as covenants, conditions and restrictions), which relate to (i) noise; (ii) pollution or protection of the air, surface water, ground water, or soil; (iii) solid, gaseous, or liquid waste generation, treatment, storage, disposal, or transportation; (iv) exposure to Hazardous Materials; or (v) regulation of the manufacture, processing, distribution and commerce, use, or storage of Hazardous Materials.

(e) "Hazardous Materials " means those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in the Comprehensive Environmental Response Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.) ("CERCLA"), as amended by Superfund Amendments and Reauthorization Act of 1986 (Pub. L. 99-499 100 Stat. 1613) ("SARA"), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.) ("RCRA"), and the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., and those substances included in the definitions of "hazardous air pollutant" under the federal Clean Air Act "hazardous substance" or "toxic chemical" under the Emergency Planning and Community Right-to-Know Act (42 U.S.C. § 7401, et seq.), or "extremely hazardous substance" or "toxic chemical" under the Emergency Planning and Community Right-to-Know Act (42 U.S.C. § 1101, et seq.), and in the regulations promulgated pursuant to said laws, all as amended;

(i) Those substances listed in the United States Department of Transportation Table (49 CFR 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto):

(ii) Any material, waste or substance which is (A) petroleum, (B) asbestos, (C) polychlorinated biphenyls, (D) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. § 1251 et seq. (33 U.S.C. § 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. § 1317); (E) flammable explosives; or (F) radioactive materials; and

(iii) Any substance which is included in the definitions of "hazardous substances", "moderate-risk waste", "waste," "hazardous waste", "hazardous material", or "solid waste" in any state or local statute, code or regulation in California; and

        (iv)    Such other substances, materials and wastes which are or become regulated as hazardous or toxic under applicable local, state or federal law, or the United States government, or which are classified as hazardous or toxic under federal, state, or local laws or regulations.